# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | | |
|---|---|---|
| **FREES, INC.** | * | **CIVIL ACTION NO. 05-1979** |
| **VERSUS** | * | **JUDGE S. MAURICE HICKS** |
| **PHIL MCMILLIAN** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss or, in the alternative, to Stay, filed by defendant, Phil McMillian ("McMillian"). (Document No. 5). Plaintiff, Frees, Inc. ("Frees"), opposes the motion. For reasons stated below, it is recommended that the motion be **DENIED.**

## BACKGROUND

This action for monetary damages and injunctive relief under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.* arises out of Frees' employment of McMillian as a senior manager and vice-president between 1996 and 2003. Frees, a manufacturer of ventilation and dust control systems for use in fiberglass production, claims that McMillian, as a condition of his employment, signed a confidentiality agreement that prohibited him from disclosing trade secrets and other proprietary information. Fed. Complaint, ¶¶ 10-11. Frees alleges that McMillian improperly accessed a computer provided to him that contained "trade secrets, proprietary information, and other data . . . provided by, pertinent to and/or owned by Frees," for the purpose of disclosing data for his own benefit and for that of Southeast Building Solutions, Inc. ("Southeast"), Frees' competitor and McMillian's subsequent employer. Fed. Complaint, ¶¶ 16, 22-24. Frees also alleges that McMillian deleted several key pieces of data. Fed. Complaint, ¶25.

On February 18, 2004, Frees filed suit in the 1st Judicial District Court, Caddo Parish, Louisiana, alleging that McMillian misappropriated trade secrets and proprietary information obtained during his employment in violation of the Louisiana Uniform Trade Secrets Act ("LUTSA"), La. Rev. Stat. Ann. § 51:1431 *et seq.* Def.'s Exhibit 1. In September 2005, Frees' suit against McMillian was consolidated with its similar suit against another former employee, Tony Pierceall. One month later, in October 2005, Southeast, who allegedly hired and conspired with both McMillian and Pierceall, was added to the consolidated suit. Pl.'s Exhibit 1. Frees seeks recovery from the defendants under state law for misappropriation of trade secrets, unfair competition and deceptive acts, interference with contractual and business relationships, breach of contract, and breach of fiduciary duty. Pl.'s Exhibit 1, ¶¶ 50-52.

In moving for dismissal or, in the alternative, a stay of this action, McMillian claims that this Court, pursuant to the United States Supreme Court's *Colorado River* abstention doctrine, should abstain because the requested relief is fully determinable by the pending state court proceeding and because allowing the federal suit to proceed would promote piecemeal litigation and waste valuable judicial resources.

## LAW AND ANALYSIS

*Colorado River* Abstention Doctrine

The *Colorado River* doctrine, first announced by the Supreme Court in *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), governs a federal court's decision to abstain in deference to parallel state court proceedings, and it is grounded in the principles of "wise judicial administration, giving regard to conservation of judicial resources and

comprehensive disposition of litigation."[1] *Id.* at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Squip. Co.*, 342 U.S. 180, 183 (1952)). The Supreme Court has cautioned that abstention is an "extraordinary and narrow exception," not the rule, and that the federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them. *Id.*; *see also Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir. 1994) (district court's discretion is "narrowly circumscribed" under *Colorado River* abstention). Thus, a dismissal or stay under the *Colorado River* doctrine "can be justified . . . only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."[2] *Id.* at 813 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)).

Before analyzing whether exceptional circumstances exist, a district court must first consider whether parallel state and federal proceedings actually exist. *See Am. Guarantee & Liab. Ins. Co.*, 408 F.3d at 251 (finding that the federal district court lacked the discretion to stay pursuant to *Colorado River* because the federal and state proceedings were not parallel); *Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 540 (5th Cir. 2002). "Suits are

---

[1] *Colorado River* abstention is limited to federal lawsuits requesting money damages and additional coercive relief. *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir. 1994). Lawsuits seeking only declaratory relief are subject to a different standard derived from *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). *See Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 250-51 (5th Cir. 2005).

[2] Determining whether "exceptional circumstances" justify abstention based on pending state court proceedings requires a district court to consider the following six factors: (1) "assumption by either court of jurisdiction over a res," (2) "relative inconvenience of the forums," (3) "avoidance of piecemeal litigation," (4) "the order in which jurisdiction was obtained by the concurrent forums," (5) "to what extent federal law provides the rules of decision on the merits," and (6) "the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction." *Black Sea Inv. Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000).

'parallel,' for the purposes of determining whether Colorado River abstention applies, if they 'involve the same parties and the same issues.'" *Diamond Offshore Co.*, 302 F.3d at 540 (quoting *RepublicBank Dallas, Nat'l Assoc. v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987); *see Am. Guarantee & Liab. Ins. Co.*, 408 F.3d at 251 (citing *Diamond Offshore*, 302 F.3d at 540); *PPG Indus., Inc. v. Continental Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973).

Citing cases from the United States Courts of Appeals for the Sixth and Seventh Circuits, McMillian claims that "parallel" does not require the same parties and the same issues. *See Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698 (7th Cir. 1992); *Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1988). Instead, parallelism exists when "substantially the same parties are litigating substantially the same issues in another forum," *Caminiti and Iatarola, Ltd.*, 962 F.2d at 700, or when the "two proceedings are substantially similar." *Romine*, 160 F.3d at 340. Under this more relaxed interpretation, McMillian argues that Frees' state and federal proceedings are parallel because "[t]here is essentially one controversy, i.e., whether McMillian misappropriated alleged trade secrets . . ." Def.'s Br., p. 4.

Frees counters that although other courts may have adopted a less restrictive interpretation of parallelism, the Fifth Circuit has repeatedly held that parallelism between state and federal proceedings does require the same parties and the same issues. Because its federal suit against McMillian under the CFAA requires proof of elements foreign to its state suit, Frees claims that the proceedings are not parallel and that abstention under *Colorado River* is unwarranted.

Although McMillian's interpretation of parallelism is reasonable[3] and consistent with the

---

[3] Indeed, if "parallel" only included suits involving the same parties and same issues, then "the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties." *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir.

4

fluid analysis of other aspects of the *Colorado River* doctrine, this court is bound by the Fifth Circuit's interpretation. Furthermore, analysis of this case under McMillian's interpretation yields the same result as analysis under the Fifth Circuit's: the state and federal proceedings are not parallel. The semantical differences between the competing interpretations distracts from the underlying question, which, as the Seventh Circuit itself stated, is "whether there is a substantial likelihood that the [state court] litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal citations omitted); *see also Sabre Oxidation Technologies, Inc. v. Ondeo Nalco Energy Servs. LP*, No. 04-3115, 2005 WL 2171897, *8-9, (S.D. Tex. 2005); *Szabo v. CGU Int'l Ins.*, 199 F. Supp. 2d 715, 719 (S.D. Oh. 2002) (quoting *AAR Int'l, Inc.*). Additionally, any doubts in the parallel nature of the state and federal proceedings are resolved against staying and in favor of exercising jurisdiction. *See AAR Int'l, Inc.*, 250 F.3d at 518.

In the federal suit, Frees has asserted a claim against McMillian under the CFAA for McMillian's alleged access to and copying of data from a computer. To prevail on this claim, Frees must establish the following: (1) "damage"[4]; (2)"loss"[5]; (3) the involvement of a "protected computer"[6]; (4) use of the computer without authorization or in excess of authorization; and (5)

---

1985).

[4] The CFAA defines damage as "any impairment to the integrity or availability of data, a system, or information." 18 U.S.C. § 1030(e)(8).

[5] Loss, treated separate from damage under the CFAA, is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

[6] "Protected computer" is defined as a computer "which is used in interstate or foreign commerce or communication, including a computer located outside the United States that is used

5

the misuse of the computer was made knowingly and with the intent to defraud. Unlike state misappropriation legislation such as the LUTSA, the CFAA does not require that the compromised or misused data constitute a "trade secret." *See, e.g., Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238 (S.D.N.Y. 2000). A violation of the CFAA exists regardless of the nature of the comprised data, and therefore a claim against McMillian may exist under the CFAA even if one is not proved in the state proceeding brought under LUTSA.

Furthermore, Frees' claims in the pending state court proceeding based on state contract and tort law will not require proof of many of the elements needed to prove its claims under the CFAA. Considering the varied elements and burdens of proof under the CFAA and LUTSA, there is little chance that the pending state proceedings against McMillian will dispose of a substantial portion of Frees' claim under the CFAA. Although the involvement of two of the same parties from the state proceeding may create some overlap between the two lawsuits, the proceedings in this Court are independent of the claims asserted in the state proceeding. Therefore, especially in light of the general presumption in favor of exercising jurisdiction, abstention based on the *Colorado River* doctrine is inappropriate, and it is recommended that McMillian's motion be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or

---

in a manner that affects interstate or foreign commerce or communication of the United States."
18 U.S.C. § 1030(e)(2)(B).

response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 17th day of January, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

H:\Abstention\05-1979.011706.rr.klh.frm