UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| FREES, INC. | CIVIL ACTION NO. 05-1979 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| PHIL MCMILLIAN, ET AL. | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is Phil McMillian's and Tony Pierceall's ("Defendants") joint Motion for Partial Summary Judgment (Record Document 82), which seeks to have Frees, Inc.'s ("Frees") Computer Fraud and Abuse Act claims dismissed, or in the alternative, to have the lost profits allegedly suffered by Frees excluded from the amount of recoverable damages. Frees opposes the motion. For the reasons that follow, Defendants' motion is **DENIED.**[1]

**I. FACTUAL BACKGROUND**

Frees provides ventilation and dust control systems to manufacturers in the fiberglass reinforced product industry. See Record Document 1-1, ¶ 6. Frees has spent considerable time, money and effort to research and develop methods which are unique in the industry. See Record Document 1-1, ¶¶ 7-8. In order to protect its trade secrets,

---

[1] The Motion for Partial Summary Judgment also seeks a ruling from the Court that Frees is barred, as a matter of law, from recovering statutory damages under the Copyright Act. See Record Document 82-3 at 8-9. This issue is moot because Frees conceded in its opposition that it was not seeking an award of statutory damages under the Copyright Act, but rather was seeking actual damages. See Record Document 89-1 at 18. Accordingly, the Motion for Partial Summary Judgment as to statutory damages under the Copyright Act is **DENIED AS MOOT**.

Frees requires employees, potential employees, customers, potential customers, and vendors to sign confidentiality agreements. See id., ¶ 8.

Defendants are former employees of Frees. See Record Document 95 at 1. McMillian was employed as a senior manager and vice-president in charge of sales and day-to-day management of the business. Pierceall was responsible for designing ventilation systems. See id. During their employment, Frees provided McMillian and Pierceall with computers which, according to Frees, contained trade secrets, proprietary information and other data (hereinafter collectively referred to as "data") belonging to Frees. See Record Document 1-1, ¶¶ 16,18.

In mid-2002, Southeast expanded its business by providing industrial ventilation and dust control systems. See Record Document 95 at 2. At different times, Southeast hired two former Frees employees, defendants McMillian and Pierceall. See id. McMillian and Pierceall, in turn, are alleged to have loaded Frees proprietary data onto Southeast's computers, which they apparently used as Southeast's employees to design, construct, implement, and/or market industrial fiberglass ventilation and dust control systems in competition with Frees. See id. McMillian is also alleged to have deleted data from the Frees computers before he left Frees' employment, which resulted in Frees expending $2,000 to INS-Triad for a forensic investigation of the computers, $11,000 to CyberControls, LLC, for consultation and forensics work, and $3,500 to MMCC for a forensic investigation of the current home and work computers of McMillian. See Record Document 89-1 at 2. Frees did not suffer an interruption of service as a result of the misconduct. See Record Document 82-2 at 1.

Frees filed the above-captioned suit alleging copyright infringement and violations

of the CFAA and is seeking monetary relief, including lost profits, as well as equitable relief. McMillian and Pierceall filed a Motion for Partial Summary Judgment contending that Frees has not alleged "loss" under the CFAA, and in the alternative, that Frees cannot recover lost profits absent an interruption of service.

**II.     LAW AND ANALYSIS**

    **A.     Summary Judgment Standard.**

Summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56©; see Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact. See Liquid Air Corp., 37 F.3d at 1075. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. See Liquid Air Corp., 37 F.3d at 1075.

If the movant does, however, meet this burden, the burden shifts and the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. 317, 106 S.Ct. 2548. To that end, the Court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. See Ameristar Jet Charter v. Signal Composites, 271

F.3d 624, 626 (5th Cir. 2001). However, the Court will not assume that the nonmoving party could or would prove the necessary facts. See Liquid Air Corp., 37 F.3d at 1075. The nonmoving party's burden will not be satisfied by "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Id. Therefore, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir. 1993); see generally Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986).

With these principles in mind, we now turn to a review of the claims at issue in the instant motion.

### B. Computer Fraud and Abuse Act.

The CFAA provides:

> Any person who suffers ***damage or loss*** by reason of a violation of this section may maintain a civil action against the violator to obtain ***compensatory damages*** and injunctive relief or other equitable relief.

18 U.S.C. § 1030(g) (emphasis added). As the plain language of statute makes clear, only a person who has suffered *damage or loss* can maintain a cause of action. The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages

incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). If the plaintiff has suffered only "loss," the statute requires the plaintiff to establish a jurisdictional threshold, or "loss" aggregating at least $5,000 in value, to maintain a cause of action. 18 U.S.C. § 1030(a)(B)(i).

### 1. "Loss"

Frees alleges the following expenditures constitute "loss":

- Payment of $2,000 to INS-Triad for a forensic investigation of the prior work computer of McMillian;

- Payment of more than $11,000 to CyberControls, LLC, for consultation and forensics work relating to the computer problems alleged to have been caused by McMillian and Pierceall; and

- Payment of $3,500 to MMCC for forensic investigation of the current home and work computers of McMillian.

See Record Document 89-1 at 2.

McMillian and Pierceall contend that Frees has not met the jurisdictional threshold because the expenses allegedly incurred by Frees do not constitute "loss" as defined by the CFAA. However, this argument fails. "Loss" is not limited to actual repairs. Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004); S. Rep. 4702-02 (1986). Courts have consistently interpreted "loss," both before and after the term was defined in the 2001 amendment, to mean a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted. See Nexans, 319 F. Supp. 2d at 475.

During oral argument, defense counsel argued that "expert fees" of this type do not constitute loss. This argument is without merit. In fact, the case repeatedly cited by

defendants supports a finding of "loss." In Resdev, LLC v. Lot Builders Ass'n, Inc., 2005 WL 1924743, *4 (M.D. Fla. 2005), the court stated:

> The CFAA defines "loss" in terms of "any reasonable cost." (Internal citation omitted). "Cost" ordinarily means an "amount paid or charged for something; price or expenditure." Black's Law Dictionary 371 (8th ed. 2004).

The cost of hiring an expert to investigate the computer damage is clearly a "reasonable cost" sufficient to constitute "loss" under the CFAA. 18 U.S.C. § 1030(e)(11); Dudick, ex rel. Susquehanna Precision, Inc. v. Vaccaro, 2007 WL 1847435, *5 (M.D. Pa. 2007) (holding that the time and resources spent and the cost of hiring an expert to research and assess the unauthorized information and assets are costs explicitly identified in the CFAA's definition of "loss"); Kaufman v. Nest Seekers, LLC, 2006 WL 2807177, *8 (S.D.N.Y. 2006) (the cost involved in investigating hacking and unauthorized access, investigating the damage, and revealing the infringing activity constitutes "loss" as defined by the CFAA); Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 474 (S.D.N.Y. 2004) (finding that "loss" includes the costs associated with investigating the damage to the computer), aff'd, 166 Fed. Appx. 559 (2nd Cir. 2006); E.F. Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 585 (1st Cir. 2001) (finding that the "loss" suffered by plaintiffs, in having to expend substantial sums to assess whether there was any physical damage to their website, is not lessened simply because no damage occurred).

Accordingly, the expenditures allegedly incurred by Frees, which, when aggregated, exceed the $5,000 threshold requirement, are sufficient to constitute "loss" under the CFAA. The Court will now proceed to Defendants' alternative argument, that Frees cannot recover lost profits absent an interruption of service.

### 2. Recoverable Damages Under the CFAA.

Defendants contend that lost revenues are not compensable damages in this case because there has not been an interruption of computer service. See Record Document 82-3 at 1. They argue the phrase "any revenue lost, cost incurred, or other consequential damages incurred *because of interruption of service*" is not only a jurisdictional threshold, but also a limitation on the types of recoverable damages. 18 U.S.C. § 1030(e)(11). Frees rejects this contention, arguing that a plaintiff is entitled to recover ordinary "compensatory damages" once the jurisdictional threshold has been met.

The Fifth Circuit has not addressed this issue and the circuits addressing the issue are split. See Nexans Wires S.A. v. Sark-USA, Inc., 166 Fed. Appx. 559 (2nd Cir. 2006); Creative Computing v. Getloaded.com LLC, 386 F.3d 930 (9th Cir. 2004). The Ninth Circuit held that loss of business and business goodwill constitutes recoverable damages under the CFAA, but the Court failed to provide any discussion or give any reason for its holding. See Creative Computing, 386 F.3d at 936. Conversely, the Second Circuit excluded lost profits from the recoverable damages, stating:

> As the district court correctly recognized, the plain language of the statute treats lost revenue as a different concept from incurred costs, and permits recovery of the former only where connected to an "interruption of service."

Nexans, 166 Fed. Appx. at 562. However, the district court in Nexans simply found that the plaintiff did not allege "loss" sufficient to establish the jurisdictional threshold; the court did not discuss whether lost profits would be recoverable as damages, nor did the court address the issue.

Both the plaintiff and defendants cite district court cases in support of their

contention. Yet, most of the cases cited by the plaintiff are interpreting the *pre-2001* version of the CFAA, and nearly all of the cases cited by defendant rely on Nexans in support of their proposition. The Court finds none of those cited cases, including the two Circuit Court decisions, persuasive or controlling. Rather than relying on dicta or pre-2001 decisions, the Court will instead look to the basic principles of statutory construction to resolve the conflict.

Statutory interpretation begins with the language of the statute itself. There is a presumption that Congress says in a statute what it means and means in a statute what it says. See Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146 (1992). In fact, the first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning. See Lamie v. U.S. Trustee, 540 U.S. 526, 124 S.Ct. 1023 (2004). If the statutory language is plain and unambiguous, the courts should not consider extrinsic materials and should not derive from such materials an interpretation that is inconsistent with the statute's plain meaning. See Guilzan v. C.I.R., 985 F.2d 819 (5th Cir. 1993). Most importantly, the court cannot assume Congress intended to say something other than what is plainly stated.

Generally, a statutory definition of a term excludes any other meaning, even if it varies from the ordinary meaning of the term. If a word is not specifically defined, it is presumed to have its "ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311 (1979). However, if a term has an accumulated, settled meaning under common law, the courts must infer that Congress intended to incorporate that established meaning. See McDermott Intern., Inc. v. Wilander, 498 U.S. 337, 111 S.Ct. 807 (1991).

It is also an elementary rule of statutory construction that every word and phrase has a purpose. Thus, in determining the meaning of a statute, the court must be careful not to construe the statute in way that renders one part ineffective or inoperative. See United States v. Nordic Village, Inc., 503 U.S. 30, 112 S.Ct. 1011 (1992).

The CFAA provision at issue is 18 U.S.C. § 1030(g), specifically the term "compensatory damages." This term is not defined by the statute, but because "compensatory damages" is a legal term of art, it is presumed that Congress intended to incorporate its established meaning into the statute. Hence, it is presumed that "compensatory damages" means "damages sufficient in amount to indemnify the injured person for the loss suffered." See Black's Law Dictionary (8th ed. 2004). The term includes all damages other than punitive or exemplary damages. 22 Am. Jur. 2d Damages § 24 (emphasis added). Moreover, it is presumed that Congress legislates with the basic knowledge of statutory construction. Had Congress intended a different meaning, they could have easily added a statutory definition of "compensatory damages," just as they added the definition of "loss" in the 2001 amendment.

Congress did specifically express an intent to limit damages for conduct solely violating Section (a)(5)(B)(i).[2] Damages recoverable for such a violation are limited to "economic damages." 18 U.S.C. § 1030(g). The term "economic damages" was not statutorily defined, but courts have consistently held that this term has its ordinary

---

[2] Section 1030(a)(5)(B)(i) provides that whoever "by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused (or, in the case of an attempted offense, would, if completed, have caused) . . . loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value."

meaning, i.e., simply prohibiting damages for pain and suffering, emotional distress, and other like damages. See Creative Computing v. Getloaded.com LLC, 386 F.3d 930 (9th Cir. 2004); P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC, 428 F.3d 504 (3rd Cir. 2005); In re Doubleclick Privacy Litig., 154 F. Supp. 2d 497 (S.D.N.Y. 2001). Similarly, without an express indication to the contrary, "compensatory damages" must be interpreted to have its ordinary, established meaning, thereby allowing "lost profits" as recoverable damages.

Further, interpreting the statute to limit the recovery of lost revenue would lead to absurd results. The CFAA defines "damage" in terms of non-economic harm and "loss" in terms of economic harm. § 1030(e)(8), (11). If the Court were to find that these terms were limitations on damages, a plaintiff would be unable to recover any monetary relief where he suffered only "damage," but no "loss." When a defendant copies unauthorized data to gain a competitive edge, it makes no sense to limit the plaintiff's recovery when the lost revenue is a direct result of defendant's misconduct.

The language of the statute is plain and unambiguous and it is unnecessary for the Court to consider extrinsic materials. But even if the statutory language was ambiguous, the Court finds that the numerous references to the "jurisdictional threshold" in the CFAA's legislative history effectively expresses Congress' intent. Congress explained that the "required monetary threshold" was established to define conduct punishable as a misdemeanor or as a felony. S. Rep. 104-357 (1996); S. Rep. 4072-02 (1986). As Congress stated, "[i]n instances where the requisite dollar amount cannot be shown, misdemeanor-level penalties will remain available against the offender under the trespass statute... [T]he valuation will... help determine whether the act constituting the offense is

punishable as a felony or a misdemeanor." S. Rep. 4072-02 (1986). The legislative history does not contain any indication of Congress' intention to limit the scope of recoverable damages in a civil action.

Accordingly, the Court finds that the terms "damage" and "loss" are terms of art used to define a jurisdictional threshold; they do not control or limit what damages are available in a civil action if the substantive and threshold standards are not met. Rather, Congress used the terms "compensatory damages" and "economic damages" to define the scope of recovery, and those terms will be given their ordinary meaning in interpreting the CFAA.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Frees has established the CFAA's jurisdictional threshold and that the CFAA does not limit the recovery of lost profits as an element of compensatory damages solely to instances where there was an interruption of service. Further, Frees has conceded that it is pursuing actual damages, not statutory damages, under the Copyright Act.

Accordingly,

**IT IS ORDERED** that McMillian's and Pierceall's Motion for Partial Summary Judgment (Record Document 82) be and is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this the 6th day of August, 2007.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE