UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

FREES, INC.                                        CIVIL ACTION NO. 05-1979

VERSUS                                             JUDGE S. MAURICE HICKS, JR.

PHIL MCMILLIAN, ET AL.                             MAGISTRATE JUDGE HAYES

**MEMORANDUM RULING**

Before the Court is a Report and Recommendation by the Magistrate Judge denying Southeast Building Solutions, Inc.'s ("Southeast") motion to dismiss for lack of personal jurisdiction. See Record Document 95. The Magistrate Judge ruled on the motion without holding an evidentiary hearing. In response to the Report and Recommendation, Southeast filed objections and a motion for an evidentiary hearing. See Record Documents 100 & 101. The Court granted the motion for an evidentiary hearing which was held on July 24 and 25, 2007. See Record Documents 104, 115, & 117.

"When alleged jurisdictional facts are disputed, all factual conflicts are resolved in favor of the party seeking to invoke the court's jurisdiction." Kwik-Kopy Corp. v. Byers, No. 01-20748, 2002 WL 1021889, *2 (5th Cir. May 9, 2002) (citation omitted). While the burden of establishing the court's jurisdiction over a nonresident remains with the plaintiff, "the standard of proof that must be satisfied depends on whether the district court conduct[s] an evidentiary hearing before its consideration of jurisdictional issues." Id. Because the Magistrate Judge resolved the motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff was required to only make a *prima facie* showing of the jurisdictional facts. See Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 343 (5th Cir. 2004). At that stage, the court accepted "as true

the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266 (5th Cir. 2006).[1]  Conversely, this Court held an evidentiary hearing, thus shifting the plaintiff's burden of establishing personal jurisdiction to a preponderance of the evidence standard.  See  Kwik-Kopy Corp., 2002 WL 1021889, *3; see also Rano v. Sipa Press, Inc., 987 F.2d 580 (9th Cir. 1993), Modern Computer Corp. v. Ma., 862 F.Supp. 938 (E.D.N.Y 1994), Hoover v. Recreation Equipment Corp., 792 F.Supp. 1484 (N.D.Ohio 1991), and In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000, 257 F.Supp.2d 717, 728 -729 (S.D.N.Y. 2003).

At the outset, the Court notes its agreement with the Magistrate Judge's finding that this case invokes specific, not general jurisdiction.[2]  See Record Document 95 at 4-6, 8 n.

---

[1] During the evidentiary hearing, Southeast disputed certain factual statements and findings made by the Magistrate Judge in her ruling, namely statements relating to Tony Pierceall, the alleged copyright infringement, and the alleged loss of hundreds of thousands of dollars of business resulting from the transfer of electronic files from Frees to Southeast.  See Record Document 95 at 5-6.  This Court attributes such findings made by the Magistrate Judge only to the standard of proof being applied.  Further, any findings made at this stage in the litigation do not purport to settle any disputed factual issues and/or the merits of any claim, but rather serve to determine whether this Court has the power to exercise personal jurisdiction over Southeast.  See Val Leasing, Inc. v. Hutson, 674 F.Supp. 53, 55 (D.Mass. 1987) (citation omitted) ("It follows, therefore, that the determination by a trial judge that the court has personal jurisdiction over a defendant does not purport to settle any disputed factual issues germane to the underlying substantive claim.  What is settled is the court's power to exercise personal jurisdiction over a defendant, nothing more.  Were this not the case, a plaintiff would be precluded by a preliminary judicial ruling from litigating disputed facts germane to the underlying substantive claim-surely a grave encroachment on the right to trial by jury guaranteed by the Seventh Amendment.").

[2] "A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants [sic] contacts with the forum state." Freudensprung, 379 F.3d at 343 (citations

10. Further, this Court agrees that the "effects" test, as set forth in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984), and Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 628 (5th Cir. 1999), applies to the instant matter. See id. at 4-5. Pursuant to such test, "when a nonresident defendant commits . . . an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses." Guidry, 188 F.3d at 628 (citations omitted). Here, as stated by the Magistrate Judge, the Computer Fraud Abuse Act ("CFAA") and Copyright Act claims sound in tort, thus supporting application of the "effects" test. There is no dispute that fraud is an intentional tort. See In re Mercer, 246 F.3d 391, 421 (5th Cir. 2001); see also Lewis v. Fresne, 252 F.3d 352, 359 (5th Cir. 2001). Copyright infringement also sounds in tort. See Isbell v. DM Records, Inc., No. 02-1408, 2004 WL 1243153, *10 (N.D. Tex. June 4, 2004); Johnson v. Tuff N Rumble Management, Inc., No. 99-1374, 1999 WL 1201891, *4 (E.D. La. Dec. 15, 1999). Further, there is persuasive case law from district courts within the Fifth Circuit holding that copyright infringement is an intentional tort and that the Calder "effects" test applies to copyright infringement claims. See Illustro Systems International, L.L.C. v. I.B.M., Corp., 2007 WL 1321825, *1 (N.D. Tex. May 4, 2007) (citations omitted); Isbell, 2004 WL 1243153, *10. This Court elects to follow the aforementioned persuasive authority and will now proceed to a review of the evidence and oral argument presented during the evidentiary hearing to determine whether

---

omitted).

Southeast's intentional conduct outside of Louisiana was calculated to injure the plaintiff in Louisiana.[3]

> In beginning her legal analysis, the Magistrate Judge stated:
>
> To resolve this motion, the court need look no further than Southeast's contacts and actions that give rise to Frees' copyright infringement claim. This claim is primarily premised upon Tony Pierceall's actions while working for Southeast. Indeed, Pierceall played a significant role at Southeast. For instance, there is evidence that Tony Pierceall was accorded all benefits extended to partners of Southeast. (Pierceall Depo., pgs. 288-289; Pl. Exh. B; Pl. Exh. F00122). Southeast also agreed to provide Pierceall with 15 percent of the company's total stock once the litigation with Frees is resolved. *Id.* In the interim, Pierceall continues to receive ten percent of Southeast's profits. *Id.* Pierceall is effectively a partner in Southeast. Thus, his actions may be imputed to Southeast for purposes of establishing minimum contacts. *Lewis*, *supra* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1366 (9th Cir. 1990)).

Record Document 95 at 5. The Court agrees that it need not look further than Southeast's contacts and actions giving rise to the copyright infringement claim to resolve the motion to dismiss. See id. And while the Court ultimately concurs with the finding that "[Pierceall's] actions may be imputed to Southeast for purposes of establishing minimum contacts," it questions the means, i.e., finding that "Pierceall is effectively a partner in Southeast," by which the Magistrate Judge reached such conclusion. Id.

---

[3] During the evidentiary hearing, Southeast argued that the "effects" test was not applicable to this case because copyright infringement is not a specific intent tort. Southeast relied on a line of cases relating to copyright infringement in the context of websites and Internet use, specifically "the nature and quality of commercial activity that an entity conducts over the Internet." Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir. 1999); see also Percle v. SFGL Foods, Inc., 356 F.Supp.2d 629 (M.D.La. 2004) and Optimal Beverage Co., Inc. v. United Brands Co., Inc., No. 06-1386, 2007 WL 654614, *1 (S.D.Tex. Feb. 27, 2007). Simply put, the Court finds this line of cases unpersuasive and elects to follow the persuasive case law from district courts within the Fifth Circuit holding that copyright infringement is an intentional tort and that the Calder "effects" test applies to copyright infringement claims. See Illustro Systems International, L.L.C., 2007 WL 1321825, *8-10; Isbell, 2004 WL 1243153, *10.

The testimony of Chris Hare ("Hare"), President of Southeast, during the evidentiary hearing clearly established that Southeast is a "C" corporation, not a partnership. Further, Hare testified that he and Mike Proctor were the only shareholders of Southeast and that neither Pierceall nor Phil McMillian have ever owned stock in Southeast. Yet, the testimony did establish that despite its corporate structure, Southeast is a small company and that Pierceall is one of its key employees. While this Court acknowledges that the Magistrate Judge's use of the word "partner" may have been a fairly loose application of the term and that such term was likely not used in its true legal sense, it declines to adopt such characterization of the relationship between Pierceall and Southeast. Instead, based on testimony adduced at the evidentiary hearing, this Court classifies Pierceall as one of Southeast's key employees.

"The acts of an agent may be imputed to the principal in order to establish personal jurisdiction over the principal." 36 C.J.S. Federal Courts § 31 (June 2007). More specifically, "the acts of a defendant's employee may be imputed to the defendant, for the purpose of establishing personal jurisdiction of the court if there is a *prima facie* showing that the employee had apparent authority to act." Id.; see also Myers v. Bennett Law Offices, 238 F.3d 1068, 1073-1074 (9th Cir. 2001). During the evidentiary hearing, Pierceall testified that he was "in charge of himself" and was subject to very little supervision. He further testified that he was in charge of preparing construction details and drawings and admitted that he used details/drawings that originally came from Frees in the course of projects on behalf of Southeast. He explained that Hare knew and consented to his use of the details/drawings. Based on such testimony, the Court finds that, for the purpose of personal jurisdiction analysis, Pierceall, as a key Southeast employee, had at

least apparent authority to prepare drawings for projects on behalf of Southeast, using the details/drawings that originally came from Frees,. As such, Pierceall shall be considered the agent of Southeast and his actions may be imputed to Southeast for purposes of resolving the motion to dismiss for lack of personal jurisdiction.

As stated by the Magistrate Judge in the Report and Recommendation, Pierceall indicated in his deposition that he used a floppy disk to transport "detail drawings" from Frees to Southeast. See Record Document 88 (sealed), Exhibit B at 101-102, 129-134. There is also evidence that Frees' construction detail drawings were copied and used by Pierceall in the course of his employment on behalf of Southeast. See id. Pierceall further acknowledged in his deposition that Southeast used a computer program, AutoCad, which he had acquired from Frees. See id. at 102-104. This deposition testimony was confirmed by Pierceall during his testimony at the evidentiary hearing. Specifically, Pierceall stated that when he first started doing drawings for Southeast, he used the AutoCad program he got from Frees. He also admitted that he uploaded certain details/drawings onto Southeast computers and that those details/drawings had originally come from Frees.

In his affidavit, Ronnie Free stated that Southeast was, in some instances, vying for all or some of the same work from the same boat manufacturers, including Monterey Boats, Delta Manufacturing, Ranger Boats, Skiers Choice, and SeaPro, that Frees had been soliciting. See Record Document 87-2, Exhibit A at ¶ 7. According to Ronnie Free, the ventilation and dust control systems being offered by Southeast in these solicitations "had previously been available from Frees only." Id. Ronnie Free further attested:

> Frees has lost fiberglass ventilation work to Southeast, including SeaPro and Monterey work, business that would have otherwise gone to Frees because Frees was the only other (and the original) source of the fiberglass ventilation

systems desired by such customers.

Id. at ¶ 8. Ronnie Free stated that Southeast's drawings for Monterey Boats contained "details having the exact same spelling and other errors in the exact same places as Frees' drawings." Id. at ¶ 9. Moreover, according to Ronnie Free, the transfer of electronic files to Southeast resulted in "hundreds of thousands of dollars in damages suffered by Frees, including an estimated loss of at least $100,000 in connection with the Monterey job alone." Id. at ¶ 10.

As set forth in Ronnie Free's affidavit and supported by testimony adduced during the evidentiary hearing, Pierceall was a former longstanding employee of Frees and would have been well aware that Frees was a Louisiana corporation, headquartered in Shreveport, and that the effects of his tortious actions would be acutely felt by Frees in Louisiana. Specifically, in light of Pierceall's use of details/drawings that originally came from Frees for projects on behalf of Southeast, it was reasonably foreseeable from his perspective that Frees could lose job(s) to Southeast, thus having a direct effect on Frees' pocket book and profits in Louisiana. After reviewing the record and hearing the testimony presented during the evidentiary hearing, this Court agrees with the Magistrate Judge and finds that Southeast's alleged tortious copyright infringement activity, via the actions of Pierecall, was purposefully directed at Louisiana such that it could have reasonably foreseen being haled into court here.

Because the Court agrees with the Magistrate Judge's finding that the "contacts related to Frees' copyright infringement claims suffice without more to confer specific personal jurisdiction over Southeast," it will not reach the issue of additional contacts with Louisiana related to Frees' CFAA claim. Record Document 95 at 6. Moreover, this Court

has carefully reviewed the Magistrate Judge's finding that the exercise of personal jurisdiction in Louisiana would be fair and reasonable. See id. at 8-9. While Southeast will experience some measure of inconvenience by litigating this matter in Louisiana, this Court cannot overlook certain key considerations, which were specifically analyzed and outlined by the Magistrate Judge: McMillian, a key witness in this matter, resides in Louisiana; technological and electronic communications will lessen Southeast's burden; Louisiana's strong interest in protecting its corporate citizens from tortious acts; the threat of inconsistent judgments if Frees were required to maintain a separate lawsuit against Southeast in Tennessee; and judicial efficiency and economy. See id. at 9.

Again, when the alleged jurisdictional facts are disputed, this Court must resolve the factual conflicts in favor of the party seeking to invoke jurisdiction. See Kwik-Kopy Corp., 2002 WL 1021889, *2. In light of that standard and after a *de novo* review of the record, including the Report and Recommendation of the Magistrate Judge, the written objections filed, and the evidence and testimony presented during the evidentiary hearing, this Court finds that Frees has proven by a preponderance of the evidence the jurisdictional facts necessary to establish this Court's personal jurisdiction over Southeast. The Court accepts the Report and Recommendation of the Magistrate Judge, as modified by the instant Memorandum Ruling.

Accordingly,

**IT IS ORDERED** that Southeast Building Solutions, Inc.'s motion to dismiss for lack of personal jurisdiction (Record Document 79) be and is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 7th day of September, 2007.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE